UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff(s),<br><br>v.<br><br>ARCHIE ELMER-LOKELA GORAI,<br><br>Defendant(s). | Case No. 2:18-CR-220 JCM (CWH)<br><br>ORDER |

Presently before the court is Archie Gorai's ("defendant") motion for compassionate release under the FIRST STEP Act. (ECF No. 89). The United States of America ("the government") filed a response (ECF No. 93), to which defendant replied (ECF No. 96).

Also before the court is the government's motion to seal. (ECF No. 94).

**I.     Background**

As relevant to this motion, the court sentenced defendant to 57 months' custody on February 19, 2019. (ECF Nos. 87; 88). While defendant has been incarcerated, the novel strain of coronavirus, COVID-19, has run rampant throughout the country and the world. While the court need not reiterate the well-known effects COVID-19 has had on day-to-day life, certain populations are particularly at risk of "severe illness" from the virus: the elderly, asthmatic, immunodeficient, and people with HIV. *See* Center for Disease Control, *People Who Are at Higher Risk for Severe Illness,* (April 2, 2020), *available at* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-higher-risk.html (*last accessed* April 8, 2020).

Defendant moves this court to "modify his term of imprisonment by permitting [him] . . . to serve his custodial sentence in strict home detention . . . at least until the pandemic subsides

**James C. Mahan**
**U.S. District Judge**

and the Federal Bureau of Prisons is in a position to safeguard inmates." (ECF No. 89 at 1). The government opposes the motion because defendant has not exhausted his administrative remedies, as required by the First Step Act, 18 U.S.C. § 3582(c)(1)(A). (ECF No. 93). The government also argues that defendant has not demonstrated "extraordinary and compelling reasons" to warrant his release. *Id.* at 14–16.

## II.  Legal Standard

"Even though courts ordinarily have the inherent authority to reconsider its prior orders, such authority does not exist when there is an "express rule to the contrary." *United States v. Barragan-Mendoza*, 174 F.3d 1024, 1028 (9th Cir. 1999). One such contrary rule exists in the sentencing context: "A court generally may not correct or modify a prison sentence once it has been imposed." *United States v. Penna*, 319 F.3d 509, 511 (9th Cir. 2003) (citing 18 U.S.C. § 3582(c)). Thus, the court may modify a sentence only when expressly authorized by statute.

The court is expressly authorized to modify a sentence under the compassionate release provision of 18 U.S.C. § 3582(c)(1)(A), as amended by the First Step Act, Pub. L. No. 115-391, 132 Stat. 5194 (Dec. 21, 2018). 18 U.S.C. § 3582(c)(1)(A). However, courts may consider compassionate release only "upon motion of the Director of the Bureau of Prisons . . . ." *Id.* If a defendant wants to file such a motion with the court, he must fully exhaust his administrative remedies before doing so. *Id.* Since the enactment of the First Step Act, a defendant may file a compassionate-release motion if his application to the BOP goes unanswered for thirty days. *Id.*

To be eligible for compassionate release, a defendant must demonstrate: (1) the existence of extraordinary and compelling reasons, and (2) that he is not a danger to the community. 18 U.S.C. § 3582(c)(1)(A); USSG § 1B1.13. Under USSG § 1B1.13, "extraordinary and compelling reasons" include, amongst other things, terminal illnesses and medical conditions "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." USSG § 1B1.13.

. . .

. . .

**James C. Mahan**
**U.S. District Judge**

### III. Discussion

As an initial matter, the government does not argue that defendant is a danger to the community. (*See generally* ECF No. 93). Thus, the court need only consider (1) whether it has jurisdiction to entertain defendant's request and (2) if there are extraordinary and compelling reasons to justify his release.

First, the government argues that this court does not have jurisdiction over defendant's motion. However, the government relies on a Third Circuit opinion in which the court held that "[g]iven BOP's shared desire for a safe and healthy prison environment . . . strict compliance with § 3582(c)(1)(A)'s exhaustion requirement takes on added—and critical—importance" during the COVID-19 outbreak. (ECF No. 36 at 2–3, 7 (quoting *United States v. Raia,* No. 20-1033, 2020 WL 1647922, at *2 (3rd Cir. Apr. 2, 2020).

*Raia* is not binding on this court, and the court is unconvinced that it should follow the Third Circuit's precedent. To the contrary, in light of COVID-19, "30 days is anything but 'exceptionally quick'—indeed, each day, perhaps each hour, that elapses 'threatens incarcerated defendants with greater peril.'" *United States v. Gross*, No. 15-CR-769 (AJN), 2020 WL 1673244, at *3 (S.D.N.Y. Apr. 6, 2020) (citations omitted). Indeed, defendant aptly describes the spread of COVID-19 in the time it has taken to brief the instant motion. (ECF No. 38 at 2–4). Nationally, the number of COVID-19 cases has risen from 80,735 to 603,059. *Id.* at 2–3. In the penological context, the number of COVID-19 cases has risen from 10 inmates and 8 staff members across 13 facilities to 388 inmates and 201 staff members across 40 facilities. *Id.* at 3–4. In that time, 13 federal inmates have died. *Id.*

Further, the court notes that defendant's facility, Lompoc USP, has only an acting warden. (ECF No. 89 at 3). Defendant initially requested compassionate release on March 24, 2020. *Id.* at 6 n.2. Defendant, through counsel, has made repeated attempts to contact the acting warden to follow up regarding his response. *Id.* at 3. Defendant has received no answer. *Id.* Thus, the 30-day administrative exhaustion window closes on April 24, 2020. To make matters worse, defendant notes that "[o]n April 16, 2020, the count at Lompoc USP, now leading the BOP in inflicted inmates and staff, had 69 inmates and 22 staff testing positive." (ECF No. 96 at

James C. Mahan
U.S. District Judge

- 3 -

2 n.4). Even those numbers may be underrepresentative because only inmates with symptoms are tested. *Id.* In light of the rapidly developing circumstances surrounding the COVID-19 pandemic, the court finds no reason to delay its determination.

The government next argues that this court should deny defendant's request and defer to the BOP, which the government contends "is best positioned to determine the proper treatment of the inmate population as a whole, taking into account both individual considerations . . . and more general considerations regarding the conditions and needs are particular facilities." (ECF No. 93 at 10). The government further argues that defendant's medical condition does not warrant compassionate release.[1] *Id.* at 14–18.

But other courts throughout the country have noted the "obvious shortcomings" in the BOP's COVID-19 Action Plan: "First, testing inside prisons has been scant except for people who self-report symptoms—which means that statistics about the number of infections already in BOP facilities are largely meaningless. And second, the plan provides no additional protections for high-risk individuals." *United States v. Esparza*, No. 1:07-CR-00294-BLW, 2020 WL 1696084, at *2 (D. Idaho Apr. 7, 2020) (footnote citation omitted). The *Esparza* court further noted that "[e]ven in the best run prisons, officials might find it difficult if not impossible to follow the CDC's guidelines for preventing the spread of the virus among inmates and staff: practicing fastidious hygiene and keeping a distance of at least six feet from others." *Id.* (citing Centers for Disease Control and Prevention, *What Law Enforcement Personnel Need to Know about Coronavirus Disease 2019, COVID-19*).[2]

Moreover, the court finds, as the *Esparza* court did, that "[t]he presence of COVID-19 . . . necessitates a more expansive interpretation of what self-care means." *Esparza*, 2020 WL 1696084, at *3. In *Esparza*, the defendant seeking compassionate release was an elderly inmate

---

[1] In support of its opposition, the government filed defendant's medical records under seal. Because these are defendant's medical records, the court grants the governments motion to seal. (ECF No. 94).

[2] *Available at* https://www.cdc.gov/coronavirus/2019-ncov/community/guidance-law-enforcement.html (last visited Apr. 14, 2020).

James C. Mahan
U.S. District Judge

- 4 -

who suffered from a variety of maladies that put him at increased risk of contracting COVID-19. *See generally id.* There, the court noted as follows:

> [T]he prison environment prevents [defendant] from being able to effectively self-isolate in the ways the CDC recommends for a person of his age and diminished health. In this moment, the inability for high risk individuals to fully self-isolate is an inability to provide self-care. So long as [defendant] remains in custody, his capacity to protect himself from a serious, or even fatal, infection will be compromised.

*Id.*

The court finds that defendant's asthma falls squarely within the ambit of preexisting conditions that the CDC has unambiguously explained place him at greater risk of COVID-19. Defendant's representations regarding his medical needs establish that he has been unable to self-care while incarcerated. (ECF No. 96 at 11). Medical staff has recommended that defendant use his inhaler more than prescribed. *Id.* Defendant has not received breathing treatments to clear his lungs, despite repeated requests. *Id.* Thus, defendant has been unable to self-care in a BOP facility already overburdened by its COVID-19 response.

Consequently, the court finds that extraordinary and compelling reasons justify defendant's release. Defendant's motion is granted.

**IV.    Conclusion**

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that defendant's motion for compassionate release (ECF No. 89) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the government's motion to seal (ECF No. 94) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's sentence of imprisonment be, and the same hereby is, MODIFIED from 57 month's incarceration to CREDIT FOR TIME SERVED.

IT IS FURTHER ORDERED that defendant shall be quarantined for a 14-day period prior to being released, consisted with BOP policy. Defendant shall be released from custody within 48 hours after the expiration of his 14-day quarantine.

**James C. Mahan**
**U.S. District Judge**

- 5 -

1    IT IS FURTHER ORDERED that defendant's counsel shall, within 7 days of this order,
2 contact the BOP to arrange transportation.
3    IT IS FURTHER ORDERED that defendant shall serve the remaining portion of the
4 original term of imprisonment (as calculated by the BOP) as supervised release with the special
5 condition that he shall be subject to home incarceration without the requirement of electronic
6 monitoring for the time being.
7    IT IS FURTHER ORDERED that defendant shall not be required to report to the U.S.
8 Probation Office in person.  However, within 72 hours of his release, defendant shall contact the
9 U.S. Probation Office by telephone to check in.
10    IT IS FURTHER ORDERED that defendant shall be restricted to his residence at all
11 times (home incarceration) except for medical necessities and or other activities specifically
12 approved by U.S. Probation or this court.
13    IT IS FURTHER ORDERED that defendant shall serve 3 years of supervised release as
14 originally imposed.
15    IT IS FURTHER ORDERED that, in light of the COVID-19 pandemic, current standard
16 condition originally imposed mandating that defendant work at least 30 hours per week at a
17 lawful type of employment and participate in community service is temporarily suspended.
18    IT IS FURTHER ORDERED that all other conditions of supervision originally imposed
19 shall remain in effect.
20    DATED April 24, 2020.

_____
UNITED STATES DISTRICT JUDGE

**James C. Mahan**
**U.S. District Judge**